IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KENNETH JOHNSON,

                Plaintiff,

                                   Civ. Action No.
                                   3:09-CV-975 (TJM/DEP)

     v.

UNITED STATE DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

                Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

KENNETH JOHNSON, *Pro Se*
P.O. Box 56
Endicott, New York 13760

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN      WILLIAM F. LARKIN, ESQ.
United States Attorney                Assistant U.S. Attorney
Northern District of New York
Federal Building
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Johnson, who at the time of filing was a fifty-four year old African American male, has commenced this action against his former employer, defendant United States Transportation Security Administration ("TSA"), a component of the United States Department of Homeland Security ("DHS"), and other named defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.,* alleging discrimination on the basis of his race, color, and age, as well as unlawful retaliation.[1] Plaintiff's claims are based upon events occurring during his employment at TSA and leading up to his termination from federal service.

Currently pending before the court is a motion by defendants for sanctions, based upon plaintiff's failure to comply with a court order directing that he provide defendants with required, mandatory disclosures and answer their interrogatories.  Having carefully considered the defendants' submission and procedural chronology of the case, the nature of the relief now sought, and the deference owed to the plaintiff, as a *pro*

---

[1]  Plaintiff's age discrimination claim is appropriately brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*., rather than under Title VII, which does not prohibit employment discrimination based upon age.

*se* litigant, without the benefit of any opposition by the plaintiff, I conclude that dismissal of plaintiff's complaint is warranted under the circumstances.

I.      BACKGROUND

Plaintiff commenced this action on August 28, 2009.  On August 20, 2010, pursuant to Rule 16 of the Federal Rules of Civil Procedure, I conducted an in-person pretrial conference in the case.  Present at the conference were the plaintiff, appearing *pro se*, and William F. Larkin, Esq., representing defendants.  During that conference, which was digitally recorded, I directed the parties to go forward with discovery and ordered that mandatory disclosures pursuant to Rule 26(a)(i) of the Federal Rules of Civil Procedure be exchanged by October 8, 2010 and that initial discovery demands be served, if desired, not later than October 29, 2010, and explained in detail plaintiff's mandatory disclosure obligation.  A Uniform Pretrial Scheduling Order ("UPSO") governing the progression of the case, and specifically embodying these requirements, was subsequently issued on August 20, 2010.[2]  Dkt. No. 51.

On October 28, 2010, defendants served interrogatories and

---

[2]  The October 29, 2010 deadline for service of initial demands was not included within the UPSO.

requests for production of documents upon the plaintiff in both hard copy and electronic format for plaintiff's convenience. After plaintiff reported having difficulty opening the compact disc ("CD") containing the discovery requests and therefore failed to provide DHS with discovery responses, defendants' counsel forwarded a second CD to the plaintiff containing the interrogatories and document demands.  In a transmittal letter dated November 30, 2010 and accompanying the second CD, defendants' counsel advised Johnson that, pursuant to the court's UPSO, the mandatory disclosures required under Rule 26(a)(1) of the Federal Rules of Civil Procedure were due on or before October 8, 2010 but that he had not received those mandatory disclosures, which were overdue.  On January 10, 2011, defendants' counsel sent plaintiff another written request for both initial disclosures and responses to defendants' written discovery demands.

Plaintiff's failure to provide mandatory disclosures and answers to defendants' interrogatories resulted in a court status conference held on February 14, 2011 to discuss the matter further. I advised the plaintiff during that conference that if he did not comply and provide defendants with the required mandatory disclosures and responses to the discovery

requests he risked having his complaint dismissed.  I thereafter issued a text order on February 16, 2011 directing the plaintiff to provide Rule 26(a)(1) mandatory disclosures and responses to defendants' interrogatories and document demands by February 18, 2011.

As of this date, plaintiff has failed to comply with the court's directive.  Plaintiff's failure to respond to defendants' discovery requests, and to provide the required mandatory disclosures, despite having been ordered to do so by the court, has prompted defendants to now move for sanctions, including dismissal of plaintiff's complaint.  To date, plaintiff has not filed a response to defendants' motion.[3]

## II.   DISCUSSION

Defendants' motion, while brought under Rule 37(b) of the Federal Rules of Civil Procedure due to plaintiff's persistent defiance of a court order directing his participation in pretrial discovery, also implicates the court's inherent authority as well as its overarching power under Rule 41(b) of the Federal Rules of Civil Procedure to dismiss a plaintiff's

---

[3]  Plaintiff's failure to respond in opposition to the pending motion is not without significance.  Under this court's local rules, a party's failure to respond to a properly filed motion can result in the motion being granted, so long as the court determines that the moving party has met its burden of demonstrating entitlement to the relief requested.  *See* N.D.N.Y.L.R. 7.1(b)(3).

complaint for failure to prosecute or based upon a failure to comply with a legitimate court order.

### 1. The Court's Inherent Authority

"[C]ourts may turn to their inherent powers, which are innate to [their] creation to impose respect for [their] lawful mandates." *La Grande v. Adecco*, No. 1:03-CV-1453, 2006 WL 2806402, at *7 (N.D.N.Y. Sept. 28, 2006) (Sharpe, J. and Treece, M.J.) (citing *United States v. Seltzer*, 227 F.3d 36, 39-42 (2d Cir. 2000)).[4] It is axiomatic that a party to an action pending in a federal district court, whether a plaintiff or defendant, is required to comply with legitimate court directives and to participate in scheduled proceedings, including status conferences and discovery. *Hall v. Flynn*, 829 F.Supp. 1401, 1403 (N.D.N.Y. 1993) (citations omitted); *see also New York v. Gleave*, 189 F.R.D. 263, 268 (W.D.N.Y. 1999) (citing *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 582-83 (S.D.N.Y. 1996)). The failure of a party to fulfill this obligation provides a basis for the striking of the offending party's pleadings and the entry of appropriate corresponding relief. *Hall*, 829 F.Supp. at 1403; *see also Doyle v. Anderson,* No. 02-CIV. 3572, 2004 WL 63484, at *1 (S.D.N.Y. Jan. 13,

---

[4] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

2004) (dismissing complaint where plaintiff failed, *inter alia*, to appear for scheduled status conference, to attend deposition, and to respond to discovery requests); *Lindsey v. Loughlin*, 616 F.Supp. 449, 453 (E.D.N.Y. 1985) (McLaughlin, D.J. & Scheindlin, M.J.) (dismissing complaint based upon plaintiff's failure to prosecute the action where he last contacted the court with his address change upon release from prison and subsequently failed to appear for a status conference scheduled by the court).

The court's inherent authority to strike a party's pleading may be exercised *sua sponte*.  See *Hall*, 829 F. Supp. at 1403; *Lindsey v. Loughlin*, 616 F.Supp. at 453 (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89 (1962)) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.").  In the present action, plaintiff's willful refusal to comply with orders of this court would justify *sua sponte* dismissal of his complaint.

### 2. Rule 37(b)

The rule governing a party's failure to obey a court discovery order

provides for an array of available sanctions to be awarded, in the court's discretion, ranging in severity up to and including dismissal of an action in the case of a recalcitrant plaintiff.  Fed. R. Civ. P. 37(b)(2)(A); *see Gissinger v. Yung*, Nos. 04-CV-534 (CBA)(JO), 04-CV-5406 (CBA)(JO), 2006 WL 1329697, at *4-5 (E.D.N.Y. May 16, 2006).[5]  The decision as to

---

[5]     Rule 37(b), under which the pending motion is brought, provides in relevant part, that

> [i]f a party . . . fails to obey an order to provide or to permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> > (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;
> >
> > (iv) staying further proceedings until the order is obeyed;
> >
> > (v) dismissing the action or proceeding in whole or in part;
> >
> > (vi) rendering a default judgment against the disobedient party; or
> >
> > (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

which of those available sanctions should be awarded in the event of a

party's failure to comply with a legitimate discovery order, is a matter

entrusted to the sound discretion of the court.  *Daval Steel Prods. v. M/V*

*Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).  The court's broad

discretion to impose sanctions pursuant to Rule 37(b)(2) is limited only by

the requirement, expressly stated in the rule, that the sanction selected be

"just" and that it relate to the particular claim to which the discovery order

was addressed.  *Insurance Corp. of Ireland v. Compagnie des Bauxites*,

456 U.S. 694, 707, 102 S.Ct. 2099, 2106 (1982).  The determination of

whether a sanction is just must be weighed in light of the record as a

whole.  *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures*

*Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979).

In deciding which of the available sanctions under Rule 37(b) to

award, some courts have looked for guidance to cases decided under

Rule 41(b).  *See, e.g.*, *Banjo v. United States*, No. 95 Civ. 633, 1996 WL

426364, at *5 (S.D.N.Y. July 29, 1996) ("[I]t is appropriate to be guided by

those factors which courts consider before dismissing a case under Rule

41(b) prior to dismissing the case under Rule 37."); *Almonte v. Coca-Cola*

---

Fed. R. Civ. P. 37(b)(2)(A).

*Bottling Co. of New York*, 169 F.R.D. 246, 249 n. 4 (D.Conn.1996) ("[T]he

factors for dismissal under Rule 41(b) are helpful in considering a

dismissal under Rule 37.").  The propriety of a Rule 41(b) dismissal for

failure to comply with an order of the court and/or for failure to prosecute

is informed by five relevant factors, including

> (1) the duration of the plaintiff's failure to comply with
> the court order, (2) whether plaintiff was on notice that
> failure to comply would result in dismissal, (3) whether
> the defendants are likely to be prejudiced by further
> delay in the proceedings, (4) a balancing of the
> court's interest in managing its docket with the
> plaintiff's interest in receiving a fair chance to be
> heard, and (5) whether the judge has adequately
> considered a sanction less drastic than dismissal.

*See Shannon v. Gen. Elect. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (failure

to prosecute action) (citation and internal quotation marks omitted).

In this case, after conducting a Rule 16 conference, the court issued

a UPSO on August 20, 2010, and during a conference held on that date

directed that the parties exchange mandatory disclosures by October 8,

2010.  Dkt. No. 51.  Defendants complied with that directive and provided

plaintiff with their initial disclosures, in addition to serving plaintiff with

written discovery demands.  The plaintiff, however, did not meet that

deadline.

In a subsequent status conference the court was advised that despite defendants' compliance with these deadlines, the plaintiff had failed to provide mandatory disclosures or to respond to defendants' interrogatories and document demands.  *See* Text Minute Entry of 2/14/11.  During that conference I cautioned the plaintiff that absent compliance I would recommend dismissal of the action to the assigned district judge as a result of his failure and refusal to comply with the court's discovery orders upon motion made by defendants.  That directive was thereafter confirmed in a text order, which qualifies as an order compelling discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure,  *see La Grande*, 2006 WL 2806402, at *8-9, unequivocally directing the plaintiff to provide Rule 26(a)(1) mandatory disclosures and respond to the defendants' discovery requests by February 18, 2011. *See* Text Order of 2/16/11.  More than two months have passed since the court issued that directive requiring plaintiff to provide mandatory disclosure and responses to defendants' discovery demands, yet plaintiff remains resolute in his refusal to comply.

In deciding what course of action to recommend to the assigned district judge, I have considered the factors articulated by the Second

Circuit, drawing upon case authority under Rule 41(b) by analogy, without the benefit of any explanation offered by the plaintiff in defense of his actions.  The duration of plaintiff's failure, as was previously noted, extends over a period of more than six months, with respect to mandatory disclosures, and more than two months have elapsed since the date of my text order of February 16, 2011 directing plaintiff's compliance.  Turning to the second factor, I note that plaintiff was pointedly advised, including during the telephone conference conducted on February 14, 2011, that his persistent failure to comply with the court's order would result in my recommendation that his complaint be dismissed.  These two factors therefore favor dismissal.

The third relevant factor, which focuses upon prejudice likely to be suffered by the adversary as a result of further delay of the proceedings, weighs heavily in favor of dismissal.  It bears emphasizing that this action has been pending for over two years and relates to alleged events occurring prior to the termination of plaintiff's employment with the defendants in September of 2007.  It is quite likely that memories of the events in question have faded, relevant documents have been discarded, and potential witnesses to the events giving rise to plaintiff's claims may

well have died or become otherwise unavailable.  *See, e.g., Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.  Given the age of this case [six years], that problem probably is severe already.  The additional delay that plaintiff has caused here can only make matters worse.").

The fourth factor calls upon the court to balance its interest in managing its docket and preserving the integrity of its orders against the plaintiff's interest in having his claims litigated on their merits.  Once again this factor militates in favor of dismissal.

The last factor to be considered is the availability of less severe sanctions.  In this instance, six months ago the plaintiff was unambiguously ordered to provide the defendants with mandatory disclosures. That directive was reiterated, and in addition plaintiff was ordered to answer defendants' interrogatories, more than two months ago. During the February 14, 2011 conference plaintiff was afforded some leniency, though urged by the court to provide responses in order to avoid the imposition of sanctions.  Plaintiff was also specifically advised that in the event of his continued defiance, I would recommend dismissal of his complaint.  Yet, despite the court's directives and urgings, plaintiff has

failed to response to defendants' outstanding discovery demands and has persisted in his refusal to do so.

It has been observed that

[w]hile *pro se* litigants are given special latitude, this is not a reason for non-compliance with specific and numerous Court Orders. . . . 'When a party seeks to frustrate [the orderly progression of discovery] by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.'

*LaGrande*, 2006 WL 2806402, at * 10 (citations omitted).  "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (quoting *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 591 (1975) (internal quotations omitted)).  In the words of the Second Circuit when faced with similar conduct and reviewing the penalty of dismissal of the plaintiff's complaint, "'[his] wilful, obstinate refusal to play by the basic rules of the system upon whose very power [he] is calling [on] to vindicate his rights cannot be tolerated any longer."  *McDonald*, 850 F.2d at 124 (quoting *McDonald v. Head Criminal Court Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987)).

Given the circumstances of this case, I find that no sanction short of

dismissal is warranted.  *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir.1994) (per curiam) ("The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal."); *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (per curiam) (" 'all litigants, including *pro ses*, have an obligation to comply with court orders' ") (quoting *McDonald*, 850 F.2d at 124).  Plaintiff's refusal to provide standard discovery has caused delay, required court intervention, increased defendants' costs, and prejudiced defendants' counsel in the ability to defend against his claims.  Having flagrantly ignored not only the warnings but orders of this court, plaintiff has left the court with no alternative but to recommend dismissal of his complaint.

    In sum, I find ample basis to recommend that the court grant the relief now sought in defendants' motion pursuant to Rule 37(b), and conclude that the recommended sanction would be just given the plaintiff's unexcused and longstanding defiance of the court's discovery order.

### 3.    Rule 41(b) Dismissal For Failure To Prosecute

    Plaintiff's inaction in this case also calls into play Rule 41(b) of the

Federal Rules of Civil Procedure, which provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action or comply with any order of the court. *Link*, 370 U.S. at 629-30, 82 S.Ct. at 1388. This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 95-CV-1190, 1996 WL 481534, at *1 (N.D.N.Y., Aug. 22, 1996) (Pooler, J.) (citing *Rodriguez v. Walsh*, No. 92-Civ-3398, 1994 WL 9688, at *1 (S.D.N.Y., Jan. 14, 1994) (other citations omitted)).

As was previously noted, the propriety of a Rule 41(b) dismissal for failure to comply with an order of the court and/or for failure to prosecute is informed by five relevant factors.[6] *See Shannon v. Gen. Elect. Co.*, 186 F.3d at 193; *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (failure to comply with order of court) (citations omitted). In deciding defendants' Rule 37 motion, I have already carefully evaluated the five factors considered by the Second Circuit in reviewing Rule 41(b) dismissals and have found that these factors weigh decidedly in favor of dismissal. Accordingly, for the same reasons set forth above, dismissal pursuant to

---

[6]      *See* pp. 9-10, *ante*.

Rule 41(a) is also warranted.

III.    SUMMARY AND RECOMMENDATION

Undeniably the courts, including the United States Court of Appeals for the Second Circuit, have historically expressed a preference for resolving litigated matters based upon relative merit, rather than on the basis of a procedural or technical default.  *See, e.g. Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95-96 (2d Cir. 1993); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). Nonetheless, courts have a countervailing vested interest in insuring compliance with legitimately issued orders, including those pertaining to discovery.  *See Bambu Sales, Inc. v. Ozak Trading, Inc.,* 58 F.3d 849, 853-54 (2d Cir. 1995).  As the Second Circuit has pertinently noted, in approving the striking of the answer and the entry of default judgment against a party based upon its failure to provide required discovery, "discovery orders are meant to be followed. 'A party who flouts such orders does so at his peril'. . .. Defendants rolled the dice on the district court's tolerance for deliberate obstruction, and they lost.  We have no intention letting them return to the table. 'If one suggests that our decision today is strong medicine, that is precisely what it is intended to be'".  *Id.* (citing and quoting *Update Art, Inc. v. Modiin Publishing, Ltd.,*

843 F.2d 67,73 (2d Cir. 1988)).

Here, plaintiff has defiantly disobeyed not only the initial directive issued in the case, but also a subsequent court order directing that he provide mandatory disclosures and answers to defendants' interrogatories, notwithstanding the court's clear directive that discovery would not be delayed and having been expressly advised that his failure to provide discovery would likely result in a recommendation of dismissal of his complaint.

This does not appear to be a case involving the typical *pro se* plaintiff who lacks the capacity to comply with legitimate court directives regarding discovery without assistance.  This action involves a plaintiff who has prepared a cogent complaint and participated at least to some extent in the case, but for some unexplained reason has now chosen to ignore a court directive, despite having been advised of the likely consequences of that refusal.  Plaintiff's non-compliance with the court's orders cannot be tolerated, particularly given the ongoing prejudice to defendants resulting from the passage of nearly two years since this action was commenced without initial disclosures and responses to defendants' discovery demands having been served by the  plaintiff.  The

circumstances described above dictate that dismissal of plaintiff's complaint is the only fair, just, and appropriate response to plaintiff's obstinate refusal.

Based upon the foregoing it is hereby respectfully

RECOMMENDED that defendants' motion for sanctions (Dkt. No. 55) be GRANTED, and that plaintiff's complaint in this action be DISMISSED in all respects, with prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1);  FED. R. CIV. P.  6(a), 6(e), and 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     April 29, 2011
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Quentin LA GRANDE, Plaintiff,
v.
ADECCO, Defendant.
No. 1:03-CV-1453 (GLS/RFT).

May 10, 2006.
Sept. 28, 2006.
Quentin La Grande, Albany, NY, Plaintiff, Pro Se.

David J. Wukitsch, Esq., McNamee, Lochner, Law Firm, Albany, NY, for Defendants.

### DECISION AND ORDER

GARY L. SHARPE, U.S. District Judge.

#### I. Introduction

**\*1** Plaintiff *pro se* Quentin La Grande brings this suit alleging unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending are his objections to Magistrate Judge Randolph F. Treece's Report, which recommended dismissal of La Grande's complaint. *See Dkt. Nos. 65, 66.* For the following reasons, La Grande's objections are without merit, and the court adopts Judge Treece's Report-Recommendation in its entirety.

#### II. Procedural History [FN1]

FN1. The Clerk is directed to append Judge Treece's Report-Recommendation to this decision, and familiarity is presumed. *See Dkt. No. 65.*

Since this action was commenced in December 2003, La Grande has failed to comply with numerous orders by the court, including, but not limited to, all discovery requirements. Despite the issuance of an order for sanctions and an emergency stay, La Grande has continued to frustrate the litigation with delay and willful noncompliance. A complete procedural history is well-documented in Judge Treece's report. *See Dkt. No. 65, pp. 1-8.*

#### III. Discussion

##### A. Objections

La Grande's objections are non-specific and frivolous. Therefore, he has procedurally defaulted. *See Almonte v. N.Y. State Div. of Parole,* 9:04-CV-484, 2006 WL 149049 (N.D.N.Y. Jan. 18, 2006). However, his objections generally state that dismissal is unwarranted and that he can provide evidence that he did not willfully disregard previous court orders. He specifically requests that the court grant him an additional stay. These contentions are without merit. As Judge Treece noted, at no time has La Grande provided any evidence detailing: (1) that he complied with discovery requirements; (2) the reason why he was not able to attend his deposition; and (3) that he never received the requested materials and the notice of deposition from Adecco. La Grande has offered no substantial justification for his willful disregard of discovery requirements. *See* FED. R. CIV. P. 37(c)(1); *see also Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002). Moreover, La Grande was notified on several occasions that his continuous failure to comply with discovery requests would result in the dismissal of his action. Accordingly, finding no clear error, La Grande's objections are without merit.

#### IV. Conclusion

Since Judge Treece's findings are not clearly erroneous, *see Almonte v. N.Y. State Div. of Parole,* 04-CV-484, 2006 WL 149049, at \*1 (N.D.N.Y. Jan. 18, 2006), this court accepts and adopts the recommendation of Judge Treece for the reasons stated in the May 10, 2006 Report-Recommendation.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Report-Recommendation filed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

on May 10, 2006 is **ACCEPTED** in its entirety for the reasons stated therein, and it is further

**ORDERED** that La Grande's request for an emergency stay (**Dkt. No. 64**) is **DENIED,** and it is further

**ORDERED** that the motion for sanctions and dismissal filed on behalf of the defendant (**Dkt. No. 44**) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY,** and it is further

**\*2 ORDERED** that the Clerk of the Court provide copies of this Order to the parties.

**IT IS SO ORDERED.**

RANDOLPH F. TREECE, U.S. Magistrate Judge.

### REPORT-RECOMMENDATION AND ORDER
### I. PROCEDURAL HISTORY

This action was commenced by *pro se* Plaintiff Quentin La Grande [FN1] on December 5, 2003, against Adecco USA, Inc., [FN2] alleging discriminatory practices by the Defendant in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. Dkt. No. 1, Compl. Specifically, Plaintiff alleges that Defendant, a Temp Agency, sent him on a job assignment where he was met with inappropriate questions from the supervisor and was given negative feedback from the supervisor at this particular assignment. After complaining to Defendant, Plaintiff claims he was no longer given "high-paying" office work assignments and, on April 4, 2003, he received a letter notifying him that he was terminated and the matter was closed. Plaintiff then commenced this action alleging he was discriminated against by Defendant.

FN1. Mr. La Grande is no stranger to *pro se* litigation. In this District, since 2000, Plaintiff has initiated eight civil lawsuits, each alleging some form of discriminatory practice on behalf of the Defendants whether it be race, gender, or even age discrimination. *See La Grande v. Key Bank Nat'l, et al.,* Civ. No. 1:00-cv-1195 (HGM/RFT) (race and gender discrimination) (lead case consolidated with *La Grande v. Leonard, et al.,* Civ. No. 5:00-cv-1300 (HGM/RFT) as the member case); *La Grande v. Bestemp Select, Inc., et al.,* Civ. No. 1:03-cv-1276 (LEK/RFT) (race discrimination); *La Grande v. Adecco,* Civ. No. 1:03-cv-1453 (within case); *La Grande v. Empire Blue Cross and Blue Shield, et al.,* Civ. No. 1:04-cv-373 (NAM/RFT) (age discrimination); *La Grande v. Anderson, et al.,* Civ. No. 1:04-cv-1020 (GLS/RFT) (race discrimination); *La Grande v. DeCresente Distributing Co., Inc.,* Civ. No. 1:06-cv-467 (FJS/DRH) (race discrimination); *La Grande v. DeCrescente Distributing Co., Inc.,* Civ. No. 1:06-cv-469 (FJS/DRH) (race discrimination).

FN2. Plaintiff incorrectly designated Defendant as "Adecco" in his Complaint.

The initial conference was set for March 18, 2004, before this Court and the Civil Case Management Plan was due on March 3, 2004. Dkt. No. 4. At the Rule 16 Conference, *inter alia,* dates certain were set for Joinder of Parties (6/30/2004), Amendment of Pleadings (6/30/2004), Mediation (7/15/04), Discovery (12/30/2004), and Motions (3/30/05). Dkt. No. 7. Despite the conspicuous statement in the Uniform Pretrial Scheduling Order (hereinafter "UPSO") that the **"DEADLINES SET FORTH ... ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE[,]"** such has apparently been systematically ignored by Plaintiff. Dkt. No. 7 at p. 1 (emphasis in original); *see also* FED. R. CIV. P. 16(b).

Only two months after the Rule 16 Conference, the first problem with Plaintiff set in motion what would be a pattern of non-compliance with Court Orders. Within the UPSO, the Court designated this action for Mandatory Alternate Dispute Resolution ("ADR"). Dkt. No. 7 at pp. 9-10. Accordingly, the parties were directed to select, within ten (10) days from the issuance of the Order, a neutral of their choice from a list of court approved neutrals; such list was readily available to both parties on this District's website. *Id.* at p. 9; *see also* http://www.nynd.uscourts.gov/adr.htm. The Court's ADR Administrator sent a "Notice of Deadline to Select Neutral" to the parties notifying them that they were "late

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

in selecting a neutral." Dkt. No. 13. This late notice notification extended the date for another ten (10) days from the date it was sent to the parties. *Id.* It also stated that should the parties fail to select a neutral, the Court would appoint a neutral for them. *Id.* Shortly thereafter, Defendant moved to have the Court appoint a neutral as communications between Plaintiff and Defendant's Counsel proved unfruitful. Dkt. No. 14. Then, on May 21, 2004, a Text Order was issued by this Court whereupon it was noted that Plaintiff failed to disclose his mandatory discovery pursuant to Rule 26.[FN3] Text Order, dated May 21, 2004. Plaintiff agreed that he would share the required information on or before May 28, 2004, and he was duly informed by this Court that if he "fail[ed] to comply with discovery, he may be SUBJECT TO SANCTIONS, WHICH COULD INCLUDE DISMISSAL OF HIS LAWSUIT." *Id.* (emphasis in original).

> FN3. Federal Rule of Civil Procedure 26 gives a laundry list of things that a party must provide to opposing parties without awaiting a discovery request. These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) objection.

**\*3** The ADR Deadline, which was originally scheduled to conclude on July 15, 2004, Dkt. No. 7, was extended, at Defendant's request, to August 15, 2004, in order to accommodate the mediator's schedule, Dkt. No. 17. However, on August 2, 2004, Defendant's Counsel again requested an extension of such deadline, this time due to delays associated with Plaintiff's efforts to find legal representation. Dkt. No. 18. The Court, once again, extended the ADR Deadline to October 15, 2004, and noted that this would be the final extension. Dkt. No. 22. In addition, the Court noted that "[t]he Plaintiff **must** participate in the Mediation even if he does not have an attorney. Plaintiff's **failure to participate in the Mediation may lead to Sanctions, which could include Dismissal of his lawsuit.**" *Id.* (emphasis added). Ultimately, ADR was unsuccessful. Dkt. No. 25.

Shortly after completion of ADR, the Court received another letter from Defendant's Counsel, dated April 18, 2005, seeking "a discovery conference and for permission to file a motion to compel disclosure" because of Plaintiff's failure to respond to Defendant's written discovery requests and Plaintiff's failure to appear for his deposition on April 15, 2005. Dkt. No. 27. Defendant's Counsel explained that the request for Plaintiff's written discovery was sent on February 9, 2005, and a notice of deposition was sent on February 28, 2005, with a scheduled deposition date of April 15, 2005. [FN4] *Id.* Furthermore, Plaintiff's failure to appear for the scheduled deposition caused the Defendant to incur unnecessary expenses, which could have been prevented had Plaintiff notified them in a timely fashion that he would not be able to attend the scheduled deposition. Because this Court previously warned Plaintiff of the consequences of his failure to comply with discovery, this Court granted Defendant's request to file a motion to compel. Dkt. No. 28. Plaintiff was warned that his failure to oppose "Defendant's motion could result in dismissal of his action in which there will be no trial." *Id.* at p. 2. At this point in the litigation, had Plaintiff not delayed this litigation through his uncooperative behavior, in accordance with the original Scheduling Order, this case would have been deemed trial ready. Since, however, a decision on the Defendant's Motion could potentially dispose of the litigation, this Court removed the case from the trial ready list.[FN5]

> FN4. Both the written discovery requests and the notice of deposition were sent to Plaintiff's record address via United States Postal Service and were neither returned to the post office nor to the sender.

> FN5. Defendant's request for an extension of pre-trial deadlines was denied. Dkt. No. 30.

On May 13, 2005, Defendant filed its Motion seeking sanctions against Plaintiff in the form of dismissal of the action due to Plaintiff's failure to comply with prior Court Orders to provide discovery responses. Dkt. No. 31. Defendant sought in the alternative, should this Court find dismissal too severe, to impose sanctions against Plaintiff,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

to compel Plaintiff to provide outstanding discovery responses, and any other relief the Court may deem appropriate. *Id.* Plaintiff's response to the Motion was due on June 6, 2005. *Id.* On June 3, 2005, the Court received a "status report" from Plaintiff wherein he professed that he has "provided the defendant Adecco and its counsel with all of the mandatory disclosures and in responding to discovery." Dkt. No. 32. However, Plaintiff did not provide any evidence to substantiate such contention nor did Plaintiff state the reason why he failed to appear at the scheduled deposition which caused Defendant to incur an unnecessary expense. *Id.*

**\*4** On July 13, 2005, this Court ruled on Defendant's Motion and held that dismissal "[was] not warranted when there are other remedies that can be exercised[.]" Dkt. No. 33 at p. 8. Instead, the Court imposed monetary sanctions directing Plaintiff to reimburse the Defendant $325 for deposition costs they incurred with further direction that Plaintiff comply with discovery and participate in another deposition. *Id.* Specifically, the Court directed Plaintiff to respond to Defendant's Demand for Interrogatories and Production of Documents on or before August 18, 2005. We further directed Plaintiff to appear at a deposition on or before August 30, 2005. Dkt. No. 33 at p. 8. As to the monetary sanction, this Court established a payment schedule whereupon Plaintiff would pay the sum of $325 to the Law Firm of McNamee, Lochner, Titus & Williams, P.C., in two installments, the first installment of $175 was due on or before September 15, 2005, and the remaining $150 was due on or before December 15, 2005. *Id.* Finally, the UPSO was amended whereupon the Discovery Deadline was extended to September 30, 2005, and the Motion Filing Deadline was extended to October 30, 2005. *Id.* Most importantly, the Court again warned Plaintiff that **"FAILURE TO COMPLY WITH THIS ORDER SHALL LEAD TO SANCTIONS WHICH MAY INCLUDE A DISMISSAL OF THE PLAINTIFF'S LAWSUIT."** *Id.*

On August 24, 2005, instead of complying with this Court's Order, Plaintiff filed an appeal to the District Judge, purportedly in accordance with Local Rule 72.1(b). Dkt. No. 34. Though filed untimely, the District Court accepted Plaintiff's appeal and set a briefing schedule. Dkt. No. 36. Defendant opposed Plaintiff's appeal. Dkt.

Nos. 40-42. On January 27, 2006, the District Judge denied Plaintiff's appeal, thereby upholding this Court's rulings and sanctions. Dkt. No. 56. Plaintiff then appealed such decision to the Second Circuit, Dkt. No. 59, who *sua sponte* determined it lacked jurisdiction over Plaintiff's appeals as a final order has not been issued by the District Court. Dkt. No. 63. Thus, Plaintiff's appeals were dismissed. [FN6] *Id.*

> FN6. In addition to appealing the District Judge's Decision, Plaintiff filed other appeals to the Second Circuit, including an appeal from a Document Rejection Order, Dkt. Nos. 47 and 48, and a Text Order, dated October 14, 2005, allowing Defendant to file a renewed motion for sanctions, Dkt. No. 49. Apparently Plaintiff's appeals were considered together and summarily dismissed for lack of jurisdiction.

Prior to the District Court's issuance of a decision on Plaintiff's appeal, Defendant sought permission to renew its motion to compel discovery and sanctions against Plaintiff for his failure to comply with the July 13, 2005 Order. Dkt. No. 43. Defendant claimed that as of October 4, 2005, the date of the letter request, Plaintiff had failed to comply with **any** of the requirements in said Order. *Id.* By Text Order, dated October 4, 2005, this Court granted Defendant's request. The Second Motion for Sanctions was filed by Defendant on October 13, 2005, wherein Defendant sought dismissal of the pending action due to Plaintiff's repeated failure to comply with prior Court Orders. Dkt. Nos. 44 & 45. A response to such Motion was due on October 31, 2005. On November 23, 2005, Plaintiff requested an adjournment and emergency stay of the action, requesting that the Court grant him a sixty (60) day adjournment because he was in the process of retaining counsel and needed more time to pay counsel a balance of $100 for reviewing his case. Dkt. No. 53. A Text Order was issued on November 23, 2005, wherein this Court granted in part and denied in part Plaintiff's request. The Court granted a stay until January 13, 2006,[FN7] upon the condition that Plaintiff file a status report detailing his efforts to retain an attorney on or before said date. Dkt. No. 54.

> FN7. The Text Order, dated November 23, 2005,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

mistakenly set a status report date of January 13, 2005, when clearly 2006 was contemplated.

**\*5** Not surprisingly, on January 17, 2006, after the deadline set by this Court had expired, Plaintiff attempted to file a Motion to Continue the Stay for an additional thirty (30) days. Such Motion, however, was rejected due to Plaintiff's failure to indicate, per Local Rule 4.1(a), that his opponents were duly served with said Motion. Dkt. No. 55. Plaintiff was further informed that the Stay imposed on November 23, 2005, was lifted on January 13, 2006, by operation of the expiration of the deadline set in that Order. Since Plaintiff's request to extend the Stay was dated January 17, 2006, it was untimely. The Court indicated it was not prepared to re-instate the Stay and gave Plaintiff until February 2, 2006 to respond to Defendant's pending Motion. On January 25, 2006, Plaintiff again sought to renew his Motion to continue the Stay. Dkt. No. 58. Such Motion was denied. Dkt. No. 62. The Court never received a response from Plaintiff to Defendant's renewed Motion for Sanctions. On April 25, 2006, as this Report-Recommendation was being drafted, the Court received a Motion for an Emergency Stay, wherein Plaintiff once again sought a sixty-day adjournment in order to retain Karen Kimball as an attorney. Dkt. No. 64. Ms. Kimball has never made an appearance in this case despite Plaintiff's claims of intent to retain her. As explained more fully below, this Court **denies** Plaintiff's belated request for a Stay and further recommends **granting** Defendant's Motion and dismissing this entire action.

## II. APPLICABLE LAW

### A. Authority Granted Pursuant to the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 37(c)(1) provides that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard,

may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

In addition, as set forth in Federal Rule of Civil Procedure 37(b)(2), a court may consider imposing the following as sanctions:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

**\*6** (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or **dismissing the action** or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

(emphasis added).

The purpose of a Rule 37 sanction is to: (1) ensure that the noncomplying party is not able to reap the benefits from his noncompliance; (2) serve as a deterrent; and (3) seek compliance with court imposed orders. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). The degree of sanctions that the court can impose on a noncomplying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to his/her non-compliance, or the harshest order, such as ordering dismissal or default. *Id.; see also Valentine v. Museum of Modern Art,* 29 F.3d 47, 49-50 (2d Cir.2004).

Courts are given broad discretion in imposing Rule 37 sanctions. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002) (citing *Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir.1999)); *see also*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

*Valentine v. Museum of Modern Art,* 29 F .3d at 49. However, before imposing sanctions, the court **may** consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Bambu Sales Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852-54 (2d Cir.1995); *Momah v. Messina Mem'l. Hosp. & Bond,* 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6, 1998).

As the imposition of sanctions is a drastic remedy, it should be considered in cases where it has been established that the non-complying party's failure to comply was wilful, done in bad faith or a callous disregard of the responsibilities set forth in the Federal Rules of Civil Procedure or a court order. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 639-40 (1976) (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958)); *State of New York v. Almy Brothers, Inc.,* 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998); *Hinton v. Patnaude,* 162 F.R.D 435, 439 (N.D.N.Y.1995) (flagrant bad faith). Furthermore, gross negligence and in some instances, ordinary negligence may suffice to show wilful and flagrant bad faith. *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1066-68 (deliberate tactical intransigence and/or gross negligence); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99 (2d. Cir.2002) (ordinary negligence); *Burks v. Eagan Real Estate Inc.,* 742 F.Supp. 49, 51-52 (N.D.N.Y.1990) (drastic remedy or a default judgment should not be considered unless the failure to comply was the result of bad faith or gross negligence).

*7 In order for a court to find that a party acted wilfully, the order of the court must be clear, there must be no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales,* 58 F.3d at 852-53. A "party's persistent refusal to comply with a discovery order presents sufficient evidence of wilfulness, bad faith or fault." *Handwerker v. AT & T*

*Corp.,* 211 F.R.D. 203, 209 (S.D.N.Y.2002) (quoting *Monoghan v. SZS 33 Assoc., L.P.,* 148 F.R.D. 500, 509 (S.D.N.Y.1993) (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). However, this statute permits either substantial justification or harmlessness to blunt the impact of sanctions. *Grdinich v. Bradlees,* 187 F.R.D. 77, 79 (S.D.N.Y.1999) (citing *Hinton v. Patnaude,* 162 F.R.D. at 439)).

Substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002) (quoting *Henrietta D. v. Giuliani,* 2001 WL 1602114 at *5 (E.D.N.Y. Dec. 11, 2001)). There is no exception to honoring and respecting discovery orders. All litigants and litigators, including *pro se,* must comply and when they flout their obligation, they must suffer the consequences of such action. *Baker v. Ace Advertisers' Serv. Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y.1992) (citing *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d Cir.1986)); *see also Valentine v. Museum of Modern Art,* 29 F.3d at 50 (imposing sanctions on *pro se* plaintiff); *Scott v. Town of Cicero Police Dep't,* 1999 WL 102750 (N.D.N.Y. Feb. 24, 1999) (providing *pro se* plaintiff an additional opportunity to be heard before imposing sanctions). Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredline,* 951 F .2d 1357, 1365 (2d Cir.1991) (citation omitted). "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.* at 1365 (citing *Nat'l Hockey League,* 427 U.S. at 643).

**B. Inherent Authority**

Furthermore, courts may turn to their inherent powers, which are innate to its creation, to impose respect for its lawful mandates. *United States v. Seltzer,* 227 F.3d 36, 39-42 (2d Cir.2000); *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir.1998). Federal courts have always had the inherent power to manage their own

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

proceedings and to control the conduct of those who may appear before them, and when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," the courts may exercise their discretion in fashioning a remedy. *Chambers v. Nasco, Inc.,* 501 U.S. 32, 45-46 (1991) (citations omitted). Even in the absence of a discovery order, a court may impose sanctions for misconduct during discovery through this inherent power to manage its affairs. *Residential Funding Corp.,* 306 F.3d at 106-07.

**\*8** However, before a court can exercise this enormous power, it should do so with restraint and upon the finding of bad faith and where abuse litigation practices are evident. *DLC Mgmt. Corp.,* 163 F.3d at 136; *see also Sanders v. City of New York,* 218 F.Supp.2d 538, 542-43 (S.D.N.Y.2002) (citing *Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267 (2d Cir.1999) for the proposition that when a court exercises its inherent power to impose sanctions for the discovery abuse of spoliation, neither bad faith nor intentional misconduct is necessary).

### III. ANALYSIS

Plaintiff commenced this action against Defendant over two years ago. Due to Plaintiff's blatant disregard of the judicial process, this Court is faced with another Motion to Compel and/or Sanctions against Plaintiff for his failure to comply with discovery and numerous Court Orders. For the reasons set forth below, the facts of this case requires a stringent penalty and it is **recommended** that Plaintiff's cause of action against Defendant be **dismissed with prejudice.**

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, a court may dismiss an action, on motion or on its own initiative, for the "failure of the plaintiff to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court [.]" FED. R. CIV. P. 41(b). Rule 37 of the Federal Rules of Civil Procedure also authorizes dismissal of an action due to a party's failure to comply with discovery and/or court orders. *See also* N.D.N.Y.L.R. 1.1(d) & 7.1(d). Given the harsh nature of dismissals, such dismissals are "appropriate only in extreme circumstances." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996). Furthermore, a court must be cognizant of the special latitude to be given to *pro se* litigants. *Webb v. Bermudez,* 1996 WL 599673, at \*1 (S.D.N.Y. Oct. 17,

1996) (citing *Salahuddin v. Harris,* 782 F.2d at 1132). However, just because La Grande is proceeding *pro se* does not mean that he can thwart the judicial process as he chooses. This Circuit has held that "while *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro se*s, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988). On numerous occasions, this Court has informed Plaintiff that his failure to comply with Court Orders may subject him to sanctions, which could include dismissal of his lawsuit. *See* Text Order, dated May 21, 2004; Dkt. Nos. 22, 28 & 33. This Court notified Plaintiff, on May 21, 2004, that he was late in submitting the required disclosures as set forth in Federal Rule of Civil Procedure 26 and Plaintiff agreed that the required material would be submitted on or before May 28, 2004. Almost one year after the May 21, 2004 Text Order was issued, Defendant requested permission to file a motion to compel disclosure and/or impose sanctions because Plaintiff failed to respond to Defendant's written discovery and failed to appear at a scheduled deposition. Dkt. No. 27. At no time has Plaintiff indicated or provided any evidence detailing (1) that he complied with discovery requirements; (2) the reason why he was not able to attend his deposition; and/or (3) that he never received the requested materials and the notice of deposition from Defendant. Plaintiff has not provided any substantial justification whatsoever as to his failure to respond to the discovery request nor for his failure to attend the scheduled deposition.

**\*9** As indicated above, substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d at 452 (quoting *Henrietta D. v. Giuliani,* 2001 WL 1602114, at \*5). If Plaintiff had contacted Defendant and proffered a valid reason for not responding to the discovery request or circumstances that prevented him from attending the scheduled deposition, the parties could potentially have come to an agreement. However, instead of trying to resolve the matter without court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

intervention, as required by the Local Rules, Plaintiff chose to disregard both mailings that were sent to his record address, and likewise ignore several Court Orders directing that he comply with his obligations in the discovery phase of this litigation. Because of Plaintiff's failure to provide this Court or Defendant with substantial justification as to why the written discovery went unanswered and why he failed to attend the scheduled disposition, Defendant instituted their first Motion to Compel/Sanctions, which this Court granted in part and provided directives; Plaintiff patently ignored these directives.

The degree of sanctions that the court may impose on a non-complying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to non-compliance, or the harshest order, such as ordering dismissal or default. *Cine Forty-Second Street Theatre Corp.*, 602 F.2d at 1066; *see also Valentine v. Museum of Modern Art*, 29 F.3d at 49. In ruling on Defendant's First Motion for Sanctions, and keenly aware of the drastic nature of dismissal as a sanction, this Court chose to impose monetary sanctions against Plaintiff for the expense Defendant incurred in connection with the deposition Plaintiff failed to attend. We further compelled Plaintiff to respond to outstanding discovery requests and to participate in another deposition. Time and time again, this Court warned Plaintiff of the consequences of his failure to comply, which could include dismissal of the lawsuit; not surprisingly, such admonitions have clearly fallen on deaf ears. Dkt. No. 33.

The Court's intention in previously imposing a less severe sanction was to impose upon Plaintiff the notion that his actions in not following this Court's Orders and the Rules of Civil Procedure had consequences. We further hoped that Plaintiff would be more cooperative in the judicial process. Obviously, such was nothing more than a hopeless effort. Plaintiff again chose to ignore this Court's Order and filed an appeal. However, filing an appeal does not automatically give a party the right not to obey with a Court Order. As stated in *Maness v. Meyers,* Orders issued by a court **must** be obeyed, even if it is later shown to be erroneous. 419 U .S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, **absent a stay,** he

**must** comply promptly with the order pending appeal." (emphasis added)). Therefore, Plaintiff was required to comply with this Court's Order pending a decision on his appeal, which he did not.

**\*10** In light of Plaintiff's incessant non-compliance, Defendant requested this Court's permission to file yet another Rule 37 Motion. Dkt. No. 43. Defendant has tried every conceivable avenue to have Plaintiff comply with this Court's Orders so that the action *instituted by Plaintiff* could expeditiously move forward. Plaintiff's "wilful, obstinate refusal to play by the basic rules of the system upon whose very power [he] is calling [on] to vindicate his rights" cannot be tolerated any longer. *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d at 124 (quoting *McDonald v. Head Criminal Court Supervisor Officer,* 117 F.R.D. 55, 58 (S.D.N.Y.1987)).

Plaintiff has tied up the Court's resources with his callous disregard for this Court's Orders and the Court's Rules for more than two years and it is not unreasonable to conclude that due to his behavior, Defendant has been prejudiced substantially. Prejudice against a party may be presumed from the amount of delay. *See United States ex rel. Drake v. Norden Sys.,* Inc., 375 F.3d 248, 255 (2d Cir.2004); *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42-43 (2d Cir.1982). While *pro se* litigants are given special latitude, this is not a reason for non-compliance with specific and numerous Court Orders. Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991). "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.* at 1365 (citing *Nat'l Hockey League,* 427 U.S. at 643).

This Court has been more than accommodating and patient with Plaintiff when, for example, Plaintiff requested an Emergency Stay for sixty (60) days in order to obtain Mrs. K. Kimball as his attorney and to give her time to prepare so she can adequately represent him. Dkt. No. 53. The Emergency Stay was granted in part and denied in part. The condition on which this Stay was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

extended was based upon Plaintiff filing a status report detailing his efforts to retain an attorney on or before January 13, 2005. Dkt. No. 54, Text Order, dated Nov. 23, 2005. Again, Plaintiff failed to file any status report indicating his efforts to obtain an attorney as part of the condition for the Stay being granted.

In order for a court to find that a party acted wilfully, the order of the court must be clear and there is no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales,* 58 F.3d at 852-53. A "party's persistent refusal to comply with a discovery order' presents sufficient evidence of wilfulness, bad faith or fault." *Handwerker v. AT & T Corp.,* 211 F.R.D. at 209 (quoting *Monoghan v. SZS 33 Assoc., L.P.,* 148 F.R.D. at 509 (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). Plaintiff's willful disregard of Court Orders is evident. Plaintiff has continuously ignored this Court's previous sanctions and admonitions and, therefore, at this stage, we find the notion of giving him more warnings to be a waste of judicial time as it would provide to be unfruitful as it has been for the past two years. Ineluctably, this Court has repeatedly extended special latitude to this *pro se* litigant, all for naught. Attempts to use Rule 37 as either a deterrent or to promote compliance has been equally unavailing. Thus, based on the totality of the circumstances and discussions of the factors set forth, we believe that **dismissal** is warranted in this action. In light of this recommendation and the facts set forth above, we deny Plaintiff's belated request for yet another Stay. Dkt. No. 64.

### IV. CONCLUSION

**\*11 WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's Request for an Emergency Stay (Dkt. No. 64) is **denied;** and it is further

**RECOMMENDED,** that Defendant's Motion to Dismiss (Dkt. No. 44) be **granted** and, in accordance with FED. R. CIV. P. 37(b)(2)(C), this entire action be **dismissed;** and it is further;

**ORDERED,** that the Clerk of the Court serve a copy

of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); see also 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b), 6(a) & 6(e).

N.D.N.Y.,2006.

La Grande v. Adecco
Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)

(Cite as: 1994 WL 9688 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

George RODRIGUEZ, Plaintiff,
v.
Captain WALSH, # 855, Defendant.
No. 92 CIV. 3398 (PKL).

Jan. 14, 1994.
George Rodriguez, pro se.

Antonia Kousoulas, Asst. Corp. Counsel, New York City Law Dept., New York City, for defendant.

MEMORANDUM ORDER

LEISURE, District Judge.

**\*1** Plaintiff George Rodriguez, proceeding *pro se,* filed this action on May 11, 1992 pursuant to 42 U.S.C. § 1983. On May 15, 1992 this action was referred to the Honorable Theodore H. Katz, United States Magistrate Judge, Southern District of New York, for all purposes including dispositive motions. On July 20, 1993 defendant moved for an order dismissing the complaint for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). On October 27, 1993 Magistrate Judge Katz filed a Report and Recommendation (the "Report") in this matter finding that, even exercising the additional patience which the United States Court of Appeals for the Second Circuit ("Second Circuit") requires when cases involve *pro se* litigants, the defendant's motion to dismiss should be granted, and that the action should be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days, after being served with a copy of the Report, to file written objections to Magistrate Judge Katz's Report and Recommendation.[FN1] Although the time to object has expired, no objections have been received by the Court or by Magistrate Judge Katz. Nevertheless, the Court has undertaken a *de novo* review of the record. Based upon

that review, the Court, as discussed below, adopts the Report and Recommendation in its entirety.

The Court's historical power to dismiss an action for failure to prosecute a case is codified in Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides, in pertinent part:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

*See also* Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) ("The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); *Minnette v. Time Warner,* No. 92-7951, slip op. at 4431, 4437, 1993 WL 233525, at \*3 (2d Cir. June 30, 1993) ("[a] district court may, *sua sponte,* dismiss an action for lack of prosecution pursuant to Fed.R.Civ.P. 41(b)." (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42-43 (2d Cir.1982))).

While dismissal of an action for failure to prosecute is " 'a harsh remedy to be utilized only in extreme situations,' " *Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2d Cir.1986) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam)), this sanction is necessary to allow courts "to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link,* 370 U.S. at 630. *See, e.g., Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993) (affirming dismissal with prejudice where plaintiff's counsel failed to comply with two Court orders and otherwise demonstrated a lack of respect for the Court); *Ali v. A & G Co.,* 542 F.2d 595, 596 (2d Cir.1976) (affirming dismissal with prejudice

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)

(Cite as: 1994 WL 9688 (S.D.N.Y.))

where counsel failed to appear for trial despite no showing of delay).

**\*2** In the instant case, plaintiff failed to perform any pre-trial discover or failed to take any steps to prosecute the action, since filing the Complaint over twenty months ago. Plaintiff failed to submit a pre-trial activity report as instructed by the Court, and failed to respond to Magistrate Judge Katz's repeated requests to schedule pre-trial discovery. Moreover, plaintiff failed to respond to any of defendant's discovery requests and failed comply with the Court's order to attend a pre-trial conference scheduled for June 9, 1993. Plaintiff's failure to appear occurred despite the Court's express warning that failure to attend could result in dismissal of the action. At the June 9, 1993 conference, defendant discussed with Magistrate Judge Katz the instant motion to dismiss for failure to prosecute. The motion was filed on July 20, 1993. Plaintiff submitted no opposition to the motion, and has not objected to Magistrate Judge Katz's Report.

Before dismissal is ordered, a court in this Circuit should give *pro se* litigants some notice of the consequences of their actions. *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990). Here, plaintiff was given numerous warnings of the possibility of dismissal. First, Magistrate Judge Katz expressly informed plaintiff of the possibility of dismissal. Second, defendant's motion papers made it abundantly clear that dismissal could result from plaintiff's failure to respond to defendant's discovery requests. Third, plaintiff had an opportunity to object to Magistrate Judge Katz's Report. Accordingly, plaintiff was properly notified of the possibility of dismissal.

There is no explanation for plaintiff's failure to pursue the action, or his failure to appear at the pretrial conference.[FN2] Under these circumstances, it is appropriate for the Court to conclude that plaintiff has abandoned the action and to dismiss the action with prejudice.

### CONCLUSION

The Court has reviewed the Report and finds it legally correct and proper. For the foregoing reasons, IT IS HEREBY ORDERED that the Report and

Recommendation of Magistrate Judge Katz, dated October 27, 1993, is affirmed and adopted in its entirety. Accordingly, defendant's motion is hereby granted, and the action is dismissed with prejudice for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

SO ORDERED.

FN1. Fed.R.Civ.P. 6(a) provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded from the computation." *See also* Fed.R.Civ.P. 6(e) (additional three days for mail).

FN2. It may be of some moment that plaintiff was paroled on February 26, 1993.

S.D.N.Y.,1994.

Rodriguez v. Walsh
Not Reported in F.Supp., 1994 WL 9688 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)

(Cite as: 1996 WL 481534 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,
v.
Kevin LUNDRIGAN, C.O., Defendant.
No. 96-CV-1190 (RSP/RWS).

Aug. 22, 1996.
Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility-Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,*

370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92-Civ-3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95-CV-1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)

(Cite as: 1996 WL 481534 (N.D.N.Y.))

on Steven A. Smith, Esq., attorney for the defendant.

**\*2** IT IS SO ORDERED.

N.D.N.Y.,1996.

Freeman v. Lundrigan
Not Reported in F.Supp., 1996 WL 481534 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Festus BANJO, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 95 CIV. 633 (DLC).

July 30, 1996.
Festus Banjo, Brooklyn, NY, pro se.

Wendy H. Schwartz, Assistant U.S. Attorney, Southern District of New York, New York City, for Defendant.

*OPINION & ORDER*

COTE, District Judge:

   **\*1** On January 30, 1995, plaintiff Festus Banjo ("Banjo") brought this action against the United States of America ("the Government") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2761 *et seq.,* seeking damages for injuries sustained when a postal truck collided on April 6, 1994, in Manhattan with a car owned and operated by Banjo. At the conclusion of discovery, the Government moved to dismiss the Complaint and for monetary sanctions pursuant to Rule 37(b), Fed.R.Civ.P., and this Court's inherent powers for plaintiff's refusal to engage in discovery and for his false deposition testimony regarding material facts.

BACKGROUND

   Banjo's Complaint alleges that he was severely and permanently injured by the April 6 accident and that his car was damaged. The issues in this action include whether Banjo suffered a "serious" injury within the meaning of the New York Insurance Law, N.Y. Ins. Law § 5104 (McKinney 1985) ("No Fault law"), which prohibits recovery for noneconomic loss except in the case of a "serious" injury; the extent of any property damage to plaintiff's car; and the extent to which the accident has prevented Banjo from earning a living.

   Banjo, who was represented by counsel at the time the action was filed and throughout discovery, stipulated to a discovery plan that the Court approved on May 8, 1995. Under the plan, discovery was to be completed by September 19, 1995. On May 19, 1995, the Government served interrogatories and document requests and noticed the plaintiff's deposition for June 30, 1995. Plaintiff did not respond to the Government's requests until July 24, 1995, at which time he produced copies of certain medical records,[FN1] tax returns for 1991 through 1994, two body-shop repair estimates for repairs to the car, the police report of the accident, and one medical bill from Hamilton Medical Services. Plaintiff's interrogatory responses, which were neither signed nor sworn to, identified a Community Hospital in California as an additional medical facility with relevant records. Banjo did not, however, provide any authorization to obtain records from that facility or any of its records.

   FN1. Medical records reveal that the plaintiff was diagnosed with "neck strain" at Lenox Hill Hospital immediately following the accident and released. Four days later he was seen at Maimonides Medical Center, where he complained of a headache but no abnormality was noted. Records from Hamilton Medical Services, where plaintiff was treated from April 12, 1994 through November 15, 1994, reflect a compression fracture of the cervical spine, cervical radiculopathy, early carpal tunnel symptoms in the left hand, right elbow triceps tendinitis, lumbosacral radiculopathy and lumbosacral derangement.

   Plaintiff's deposition was held on September 12, 1995. At the deposition the Government learned that Banjo had additional documents responsive to Government document requests that had not been produced. Banjo also identified for the first time two neurologists from whom he had received treatment following the accident and a hospital where he had received care prior to the accident. The Government requested authorizations for access to these medical

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

records and reiterated its request for an authorization to obtain the California medical records. The deposition also revealed that the dollar amounts of damages alleged by Banjo in his interrogatory answers were incorrect. The Government requested that revised, sworn responses to the interrogatories be provided.

On October 5, 1995, the Government forwarded the original deposition transcript of Banjo's deposition to his attorney for Banjo's review and signature. The transcript has never been returned. On January 5, 1996, plaintiff's counsel represented to the Court that he had sent Banjo the original deposition for his review. In response to this motion, Banjo indicates that he did not receive a copy of his deposition until February 6, 1996, but has not returned it because it has innumerable mistakes and is incomplete. He contends, therefore, that the deposition should be disregarded by the Court.

*2 Banjo's attorney requested an extension of the discovery deadline on September 11, 1995. Through a September 19, 1995, letter, the Government notified Banjo of all of his outstanding discovery obligations. On September 20, 1995, the Court extended discovery to November 22, 1995. On September 28, 1995, the Court signed an Amended Scheduling Order that set out a more detailed schedule for production of outstanding items. Banjo was ordered to produce the outstanding documents identified in the Government's September 19, 1995, letter by October 29, 1995, with certain exceptions noted in the Order.

On October 16 and 17, 1995, Banjo produced additional authorizations for medical records, including one for the California records. Banjo did not produce and as of today has not produced revised and sworn interrogatory answers regarding various damage issues; additional medical bills; documents regarding damage to the car; or the photographs he took of the car.

On July 24, 1995, Banjo had identified Dr. Licciardi and two of his associates, all of whom are from Hamilton Medical Services, as his experts. Banjo never produced expert reports, however, as required by Rule 26(a)(2), Fed.R.Civ.P., and as specifically scheduled in the Orders of September 28, 1995, and November 27, 1995. When it

became clear that Banjo would not be providing expert reports for Dr. Licciardi and his associates and thereby would be waiving his right to call them as experts, the Government sought to take the deposition of Dr. Licciardi as a treating physician. When Dr. Licciardi learned that the Government would not compensate him for his deposition testimony, Dr. Licciardi refused to appear. The report produced by the Government's expert indicates that Banjo sustained no injury from the accident aside from a possible cervical and lumbar strain or sprain.

The Government contends that documents it has obtained from third parties reveal that Banjo gave false testimony at his deposition about the following three areas. At his deposition Banjo testified that in the ten years prior to the accident he had not suffered any serious injuries requiring medical attention; that he had not gone to a hospital for anything other than a swelling of the wrist; and that the April 6, 1994, accident was the first accident of his life. The California medical records show, however, that Banjo was involved in a car accident in 1985 in which he may have sustained injuries to his cervical spine. In his opposition to this motion, Banjo contends that the 1985 accident was a motorcycle accident that resulted in nothing more that a cut to his left hand, which was bandaged up, and that he was released from the hospital in less than two hours. He does not contend that the Government's description of his deposition testimony is inaccurate.

Banjo testified repeatedly in his deposition that he has been unable to drive since the accident. Records from the Department of Motor Vehicles reveal that Banjo received citations for moving violations on September 1, 1994, and September 10, 1994. Records from the Taxi and Limousine Commission show that Banjo received a citation at LaGuardia Airport on July 2, 1994, for operating a limousine for hire without a license to do so. Each of these incidents occurred after the April 6, 1994, accident and before the September 12, 1995, deposition. In his opposition to the motion, Banjo does not address the September citations, but contends that he was only a passenger in the car at the time the July 2 citation was issued at LaGuardia airport.[FN2]

FN2. The citation indicates that Banjo was

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

observed operating the vehicle.

**\*3** Finally, at his deposition Banjo testified that the accident damaged his car's transmission, that it got progressively worse, and that after May 1994 he was unable to drive it. The July 2, 1994, citation at LaGuardia airport, however, was for the 1984 Lincoln Town Car limousine that Banjo was driving at the time of the accident. In his opposition to the motion, Banjo contends that a friend of his fixed the transmission of the car sufficiently on July 1 for the vehicle to make it to the airport.

The only other defense that Banjo has offered to the Government's accusation that he gave false deposition testimony is the complaint that an attorney other than the one he had retained appeared to represent him at the deposition. He also asserts that he was weary, had not adequately prepared for the deposition, and that it was the first time he had ever been deposed.

At a conference held with the Court on December 1, 1995, the government described the deficiencies relating to discovery, and plaintiff's counsel indicated his desire to be relieved as counsel for the plaintiff. The Court ordered plaintiff's counsel to submit a written application supported by an affidavit in connection with his request to withdraw, and the Government was ordered to outline its complaints regarding discovery in a letter. The Court adjourned the conference to December 15, 1995, with the explicit understanding that plaintiff's counsel would arrange for Banjo to attend the conference.

On December 7, 1995, and in response to the December 1 Order, the Government notified the Court and plaintiff's counsel in writing of its desire to make a motion pursuant to Rule 37 and the Court's inherent powers for an order dismissing Banjo's Complaint for his failure to participate in discovery and for his false deposition testimony. The Government's letter gave a detailed description of the failures and the false testimony.

Banjo did not attend the December 15, 1995, conference despite being notified by his attorney that he should attend. Banjo's attorney renewed his request to withdraw from the action on the grounds that, among other

things, Banjo refused to assist his attorney in his attempts to comply with the Government's discovery demands. Banjo's attorney noted that he would have no substantive response to the issues raised in the Government's December 7 letter and that he believed there was a "severe possibility" that the plaintiff would not even make the no fault threshold since he wouldn't be able to show that he had sustained a "serious" injury. According to plaintiff's counsel, Banjo had not seen Dr. Licciardi, his treating physician, for a year. The attorney indicated that he had told Banjo that the case should be voluntarily withdrawn so that Banjo could avoid the imposition of costs and sanctions. The Court directed Banjo's attorney to serve Banjo personally with his affidavit seeking to withdraw, the Government's December 7, 1995, letter, and an Order to Show Cause requiring Banjo to appear in person at a conference on January 5, 1996. The Order to Show Cause, which the Court issued on December 20, indicated that the plaintiff was required to show cause why the case should not be dismissed for failure to participate in discovery.

**\*4** On January 5, 1996, Banjo, his attorney and the Government attended a conference with the Court. The Court granted the attorney's request to withdraw, a request to which Banjo consented; confirmed that Banjo had been served with the Government's December 7 letter; and allowed Banjo additional time to obtain another attorney. The Court also set a briefing schedule for the Government's motion and advised Banjo of three alternatives with which he was faced. One alternative was to voluntarily dismiss the case before January 19. If he did so, the Government would not file the motion and would not ask the Court to impose costs on Banjo in connection with the motion. Another option was to obtain the services of a new attorney by January 19. If that lawyer asked for a conference with the Court, I indicated I would suspend the motion schedule until I had an opportunity to hear from the attorney. A third option was that Banjo would decide to pursue the case and respond to the Government's motion. In the case of the latter option, he ran the risk that I would grant the Government's request to impose sanctions, including a monetary fine against him, when I decided the motion. Banjo indicated that he understood his options.

In response to the Government's motion, plaintiff

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

asserts that "he had no Attorney ... to adequately represent him," and that his attorney "collaborated with the Government" and "was bought and purchased by the Government." With respect to the latter accusation, plaintiff apparently means that his attorney was paid by the Government to deter him from suing the Postal Service driver and instead to sue the Government; according to plaintiff, his attorney subsequently told him that "he could not take the Government to court and prevail." Finally, the plaintiff reiterates his various injuries and his belief that he is entitled to be paid for such injuries, and he requests leave of Court to sue the driver of the Postal Service truck that allegedly injured plaintiff.[FN3]

> FN3. Plaintiff's argument rests on the erroneous assumption that he could have stated a claim under the FTCA against the driver. So long as the driver was acting within the scope of his employment, the tort remedy under the FTCA against the Government is exclusive. *See* 28 U.S.C. § 2679(b)(1). For the same reason, plaintiff's application for leave to sue the driver is denied.

LAW

*Dismissal Under Rule 37(b)(2)*
Rule 37(b)(2), Fed.R.Civ.P., provides, in relevant part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

So long as the Court has "clearly articulated [an] order ... requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with the order." *Turner v. Hudson Transit Lines, Inc.,* 1992 WL 51570, at *4 (S.D.N.Y. Mar. 9, 1992) (citing *Daval Steel Prods. v. M/V Fakredine,* 951

F.2d 1357, 1363 (2d Cir.1991) (citations omitted)). Because dismissal is a "harsh remedy" and should be used "only in extreme situations," it may be entertained only where the party has demonstrated " 'willfulness, bad faith, or any fault' " in the course of discovery. *See Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) (citing *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972); quoting *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (citation omitted)). In addition, this sanction will be imposed only after the party has been warned of the risk of dismissal for failure to comply with Court orders. *See Bobal,* 916 F.2d at 764. Dismissal is appropriate, however, "where the plaintiff has demonstrated an unwillingness to fulfill the discovery obligations imposed by the Federal Rules of Civil Procedure." *Moore v. Kaye Ins. Assocs.,* 1995 WL 600244, at *3 (S.D.N.Y. Aug. 8, 1995)* (Cote, J.).

*5 Although Rule 41(b), Fed.R.Civ.P., governs dismissals based on plaintiff's failure to prosecute, it is appropriate to be guided by those factors which courts consider before dismissing a case under Rule 41(b) prior to dismissing the case under Rule 37. *See Moore,* 1995 WL 600244, at *4. These factors are (1) the duration of plaintiff's failures; (2) whether plaintiff has received notice of the potential sanctions; (3) the prejudice to the defendant arising from plaintiff's actions; (4) due process considerations balanced against the Court's interest in managing its docket; and (5) the efficacy of lesser sanctions. *See Lucas v. Miles,* 1996 WL 273749, at *2 (2d Cir. May 16, 1996); *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994).

*Fees Under Rule 37(c)*

In addition, Rule 37(c) endows this Court with discretion to assess sanctions for failure to disclose or for disclosure of false or misleading information as required by the Federal Rules of Civil Procedure. Thus,

A party that without substantial justification fails to disclose information required by Rule 26(a) ... shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

sanctions ... [such as] payment of reasonable expenses, including attorney's fees, caused by the failure, [as well as sanctions pursuant to Rule 37(b)(2)(A), (B), and (C) ].

Rule 26(a)(5) provides parties with various discovery methods, including depositions, written interrogatories, production of documents, and requests to admit. *See* Rule 26(a)(5), Fed.R.Civ.P.

*Inherent Powers*

A court has inherent power "to supervise and control its own proceedings and to sanction counsel or a litigant for bad faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir.1995) (citing *Chambers v. Nasco, Inc.,* 501 U.S. 32, 43-50 (1990)). *See also U.S. v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991), *cert. denied,* --- U.S. ----. Such power allows the Court discretion in choosing an appropriate sanction, ranging from counsel fees (whether imposed on counsel or his or her client) to outright dismissal for failure to prosecute. *See Chambers,* 501 U.S. at 43-45; *Teamsters,* 948 F.2d at 1345.

Nevertheless, bad faith conduct that can be adequately sanctioned under the Federal Rules does not usually warrant resort to the court's inherent power. *Chambers,* 501 U.S. at 50. Furthermore, sanctions pursuant to the court's inherent power are inappropriate unless the challenged conduct is: "(1) entirely without color and (2) motivated by improper purposes such as harassment or delay." *Milltex Indus. Corp. v. Jacquard Lace Co. LTD.,* 55 F.3d 34, 38 (2d Cir.1995) (internal quotation marks and citation omitted). Like other sanctions, the Court must be mindful of the litigant's or counsel's due process rights, and "due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers." *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 & n. 14 (1980). Finally, a court's factual findings of bad faith must entail "a high degree specificity." *Id.* (internal quotation marks omitted).

DISCUSSION

**\*6** The Government's discovery demands reasonably sought to obtain information about plaintiff's prior accidents, medical treatment, post-accident injuries, and work activities to evaluate plaintiff's claim that the accident caused him a serious injury as required by New York's No Fault law. The Government's discovery demands concerning the state of plaintiff's limousine after the accident were also eminently reasonable since they directly relate to the extent of plaintiff's property damage and economic loss allegedly caused by the accident.

*Willfulness and Duration of Plaintiff's Failures*

Plaintiff, through his counsel, originally agreed to complete discovery by September 19, 1995. This deadline was subsequently extended to November 22, 1995. Plaintiff has been on notice of specific discovery requests since the Government's September 19, 1995 letter; this Court's September 28, 1995 Order clearly required plaintiff to respond to the Government's discovery demands as set forth in said letter (with certain exceptions) no later than October 20, 1995. Plaintiff has failed to produce, for example, the photographs plaintiff took of his limousine, documents relating to the alleged property damage, and various medical bills. In addition, the September 28 Order required plaintiff to provide answers to the Government's interrogatories by November 22, 1995; to date, no sworn interrogatory answers have been provided to the Government. The September 28 Order also required plaintiff to satisfy the Government's Rule 26 discovery demands regarding plaintiff's proposed experts no later than October 27, 1995. The Court's November 27, 1995 Order extended this deadline to December 5, 1995, but to date, no expert reports have been produced by the plaintiff. The duration of plaintiff's delay in conducting basic discovery, therefore, has been extensive and in willful disregard of Court orders.

*Notice and Due Process Considerations*

Plaintiff has been on notice of the instant motion since early December 1995. This Court gave plaintiff several opportunities to respond to the threat of sanctions set forth in the Government's December 7 letter. Plaintiff was given an opportunity to appear before this Court on December 15, 1995, but he failed to appear. The December 20 Order to Show Cause expressly warned plaintiff of the threat of dismissal. Most importantly, when plaintiff did appear before this Court in response to the December 20 Order on January 5, 1996, this Court gave plaintiff one final opportunity to withdraw his case or otherwise face the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

threat of sanctions. Plaintiff, therefore, has had ample notice of the instant motion and ample opportunity to respond to said motion; due process requires no more.
*Prejudice to the Defendant*

Plaintiff's discovery failures have precluded the Government from learning the extent of plaintiff's alleged bodily injuries and property or economic damages; without question, discovery into these matters is essential in a personal injury case such as this one, and plaintiff's failure to produce such relevant facts "substantially impairs an adversary's ability to answer the plaintiff's allegations and to defend oneself at trial." *Moore, 1995 WL 600244, at \*4.*
*Efficacy of Lesser Sanctions*

**\*7** Discovery has long been over. Given the paucity of information which the Government has gathered regarding plaintiff's alleged injuries both bodily and economic, and the complete failure to produce Dr. Licciardi's expert report, there is no lesser sanction short of dismissal that is appropriate under these circumstances. Simply put, plaintiff cannot show that his alleged noneconomic injuries are "serious" as required by New York's No Fault law. Requiring the Government to bear the expense of a trial in such circumstances would be both unnecessary and costly. Furthermore, with respect to the Government's charges that plaintiff lied at his deposition, I find that plaintiff's response to said charges is inadequate and strongly indicative of his unwillingness to conduct discovery honestly and responsibly. Additionally, plaintiff's failure to sign and return his deposition, with or without corrections, is further evidence of plaintiff's willful failure to participate in discovery. Such willful obstruction of discovery has in the past warranted dismissal pursuant to *Rule 37* "not only as punishment for [such] conduct, but also as a deterrent to others." *See Nittolo v. Brand, 96 F.R.D. 672, 676 (S.D.N.Y.1983).*
*Monetary Sanction*

For the same reasons, plaintiff's inadequate explanations for the inconsistencies which the Government discovered regarding plaintiff's deposition clearly demonstrate that plaintiff has acted in bad faith and with the improper motive to frustrate discovery by the Government.

CONCLUSION

Dismissal pursuant to *Rule 37(b)(2), Fed.R.Civ.P.*, is therefore warranted. The Clerk of Court is hereby ordered to dismiss the Complaint with prejudice. I further find that a monetary sanction pursuant to *Rule 37(c), Fed.R.Civ.P.*, due to plaintiff's failure to produce documents and sworn interrogatory answers is appropriate under the circumstances. This monetary sanction is also made pursuant to this Court's inherent powers for plaintiff's false deposition testimony. The plaintiff is ordered to pay $200.00 in attorney's fees and costs to the defendant within 60 days after entry of this Order. The Government's motion for costs and attorney's fees beyond this amount is denied in light of plaintiff's limited economic circumstances.

SO ORDERED:

S.D.N.Y.,1996.

Banjo v. U.S.
Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

**H**

Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,

E.D. New York.
Howard GISSINGER, and Esther Gissinger, Plaintiffs,
v.
Pao YUNG, Defendant.
Howard Gissinger, and Esther Gissinger, Plaintiffs,
v.
New Pao Yung Enterprises, Co., Ltd., Defendant.
Nos. 04-CV-0534 (CBA)(JO), 04-CV-5406 (CBA)(JO).

April 21, 2006.
May 16, 2006.

Alisa L. Silverstein, Herzfeld & Rubin, P.C., New York, NY, for Plaintiffs.

### *ORDER*

AMON, United States District Judge.

**\*1** In these two related cases, plaintiffs Howard and Esther Gissinger (collectively, "the Gissingers") seek damages for injuries Howard Gissinger allegedly suffered after he fell from a ladder. The defendants are Pao Yung, and its successor in interest New Pao Enterprises Co., Ltd. The Gissingers allege that the defendants are responsible for the defective design and manufacture of the ladder from which Howard Gissinger fell. In each case, the defendant has filed an answer but has done nothing further and has ignored all discovery obligations.

On August 9, 2005, the Gissingers filed a motion for an order compelling the defendants to respond to discovery requests, and asking the Court, should that order be ineffective, to either strike the defendants' answers in both cases pursuant to Federal Rule of Civil Procedure ("Rule") 37, or to enter a default judgment pursuant to Rule 55. On February 7, 2006, the Honorable Kiyo A. Matsumoto, United States Magistrate Judge, granted the Gissinger's motion for an order compelling discovery, and directed the defendants to respond to outstanding discovery requests within forty-five days of the date of the order. Magistrate Judge Matsumoto's order specifically warned the defendants that failure to comply with its terms could result in a recommendation that this Court strike the

defendants answers and/or enter default judgments against them. The defendants did not respond to the outstanding discovery requests.

On April 21, 2006, Magistrate Judge James Orenstein, to whom the matter had been reassigned, submitted a Report and Recommendation to this Court which concluded that the Court should strike the defendants' answers, but that entry of a default judgment would be premature. Magistrate Orenstein directed the Gissingers to serve copies of the Report and Recommendation on the defendants, and granted the defendants ten days from the date of service to file any objections. The Gissingers have filed an affidavit indicating that the Report and Recommendation was served on the defendants at their last known address on April 24, 2006 by mailing via UPS.[FN1] Substantially more than ten days have since elapsed, and neither defendant has filed any objection to the Report and Recommendation.

> FN1. As described in greater detail in Magistrate Judge Orenstein's Report and Recommendation, the defendants at some point left their address in Taiwan without providing a forwarding address. The Gissingers have not since been able to locate the defendants, despite diligent efforts.

Upon careful consideration of Magistrate Judge Orenstein's recommendation and the record in this case the Court adopts the Report and Recommendation as the opinion of the Court. The defendants' answers are to be stricken from the record in each of the above-captioned cases. The Clerk of the Court is to enter a notation of default in each case pursuant to Rule 55(a). The Gissingers may move for entry of default judgment pursuant to Rule 55(b)(2).

SO ORDERED.

JAMES ORENSTEIN, Magistrate Judge.

### **REPORT AND RECOMMENDATION**

In these two related actions, plaintiffs Howard Gissinger and Esther Gissinger (together, "the Gissingers") seek to recover damages arising from the severe injuries that Mr. Gissinger claims to have sustained

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

after he fell from a ladder. The defendants in these cases (to whom I refer collectively as "Yung") are Pao Yung, a corporate entity that the Gissingers claim was responsible for the defective design and manufacture of the ladder from which Mr. Gissinger fell, and its successor in interest, New Pao Yung Enterprises Co., Ltd. In each case, the defendant has filed an answer but has done nothing since to comply with its discovery obligations. As a result, the Gissingers now seek an order pursuant to subsections (b)(2)(B) and (d) of Federal Rule of Civil Procedure 37, striking Yung's answers or entering a default judgment against the defendant in each case. For the reasons set forth below, I respectfully recommend that the court strike Yung's answers.

I. *Background*

**\*2** The instant suits are two of three related actions currently before this court concerning the design and manufacture of the ladder from which Howard Gissinger fell on December 16, 2001. *See* docket entry ("DE") 1 ¶ 30. The Gissingers filed the first of the three in New York state court against defendants Collins International, Co., Ltd. and Collins Company Limited, Taiwan (collectively, "Collins"), the alleged distributor of the ladder at issue. *See* CV 03-1963(CBA), DE 1 at 6-7. Collins removed that case to this court by notice of removal dated April 23, 2003. *Id.* at 1-2. Their second lawsuit, filed on February 9, 2004, named Pao Yung as a defendant based on an allegation that that company was responsible for the ladder's design and manufacture. *See* CV 04-0534 *("Yung I"),* DE 1. The Gissingers filed the third lawsuit on December 13, 2004, against Pao Yung's successor in interest, New Pao Yung Enterprise Co., Ltd. *See* CV 04-5406 *("Yung II")* DE 1. After substantial delays occasioned by the difficulty of locating the foreign defendants, the Gissingers effected personal service on Yung's statutory representative on January 13, 2005. *See Yung I,* DE 6 at 2; *Yung II,* DE 2 at 2. The Gissingers report that Yung timely served an answer in each of the respective cases on February 24, 2005. Although these submissions do not appear on the docket sheet of either case, the receipt of a responsive pleading is noted on the docket sheet of *Yung I* (DE 7), and the Gissingers included copies of Yung's answers with their submissions in connection with the instant motion. *Yung I,* DE 12, Ex. D; *Yung II,* DE 7, Ex. D. I therefore conclude that Yung

timely served an answer to each complaint.

Those answers represent the entirety of Yung's participation in these cases. In contravention of several court orders, Yung has failed to make the initial disclosures requirued by Federal Rule of Civil Procedure 26(a), has ignored the Gissinger's discovery requests and made no requests of its own, and has failed to appear as required at the three status conferences that were scheduled after the answers were served. At the first of these conferences, on Hoard 10, 2005, Magistrate Judge Matsumoto entered an order directing Yung to make its Rule 26(a) disclosures by March 25, 2005, and directing all parties to propound written discovery requests by the same date. At the second conference, the Gissingers reported that an investigator they had hired to locate Yung had discovered that Yung had left Taiwan and its whereabout were unknown. At the third status conference held on June 3, 2005, the Gissingers moved for an order to compel Yung to provide responses to the plaintiffs' discovery requests. Judge Matsumoto directed the Gissingers to serve Yung with their discovery requests and motion papers by UPS International and to file delivery receipts with the court, and granted Yung 30 days from delivery of these submission to respond to them. The Gissingers subsequently reported that UPS International had been unable to deliver the discovery and motion papers since Yung had left its last known address without providing a forwarding address. *See Yung I,* DE 10; *Yung II,* DE 5.

**\*3** Thereafter, Judge Matsumoto granted the Gissingers leave to file a motion to compel discovery and impose sanctions including a judgment of default pursuant to Fed.R.Civ.P. 37. The Gissingers filed a motion to that effect on August 9, 2005, seeking an order compelling Yung to respond to outstanding discovery requests within 30 days and further requesting that in the event that Yung failed to do so, the court strike Yung's answers in both cases or, alternatively, enter default judgments against it. *Yung I,* DE 12; *Yung II,* DE 7. Yung never responded to or opposed the Gissingers' motion. Accordingly, on February 7, 2006, Judge Motsumoto granted the Gissingers' motion to compel and ordered Yung to respond to the Gissingers' discovery demands by March 24, 2006. *Yung I,* DE 14-15; *Yung II,* DE 9 ("the February Order"). Judge Matsumoto expressly warned Yung that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

failure to comply with her order could result in a recommendation that the district court strike the answers in the two cases or enter default judgments. Judge Matsumoto also ordered the Gissingers to serve a copy of the February Order on Yung at its last known address in Taiwan, to file affidavits of service by February 17, 2006, and to advise the court by April 3, 2006, whether Yung had complied with the February Order. Finally, Judge Matsumoto noted that should Yung fail to comply with the February Order, the Gissingers could renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Id.*

The Gissingers filed affidavits of service of the February Order on February 16, 2006. *Yung I,* DE 16-17; *Yung II,* DE 10. On April 3, 2006 (by which time the cases had been reassigned to me for pretrial supervision), the Gissingers reported that Yung had failed to comply with the February Order and advised me that they intended to renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Yung I,* DE 18; *Yung II,* DE 11.

II. *Discussion*

Rule 37 empowers a court to sanction a party for failure to comply with a discovery order. *See* Fed.R.Civ.P. 37(b)(2), (d). The rule identifies a range of permissible sanctions from the modest relief of requiring the recalcitrant party to reimburse its adversary for the expenses incurred in vindicating its discovery rights, to more severe steps such as precluding evidence or deeming disputed matters to be resolved adversely to the noncompliant party, to the harshest sanctions, which the Gissingers now seek, of striking an answer and entering judgment against the offending party." Fed.R.Civ.P. 37(b)(2); *Cine Forty-Second Street Theatre Corp., v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). The Second Circuit has repeatedly affirmed its "belief in the importance of appropriate sanctions as a necessary means of dealing with a recusant party." *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988) (citing *Cine,* 602 F.2d at 1063-1064). Although the district court has broad discretion in choosing an appropriate sanction, it should reserve the most severe punishments for

the "rare" cases in which "they are necessary to achieve the purpose of Rule 37 as a credible deterrent." *Id.* In general, a drastic sanction is only warranted if the noncompliance has been "willful, or in bad faith, or otherwise culpable." *See* Luft v. Crown Publishers, Inc., 906 F.2d 862, 865 (2d Cir.1990) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)). Among the factors the court should consider in selecting an appropriate sanction are the extent and duration of the noncompliance, the culpability of the noncompliant party, the adequacy of notice, and the efficacy of lesser sanctions. *See* Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852 (2d Cir.1995).

**\*4** Here, Yung has completely failed to participate in discovery for well over a year. No attorney has ever filed a notice of appearance on Yung's behalf and Yung has not otherwise indicated any willingness to participate in the litigation of the instant claims. The Gissingers have served Yung at its last known address with discovery orders dating back to March 10, 2005, its motion papers with respect to its prior motion to compel and the instant motion, and Judge Matsumoto's orders, including the February Order in which she expressly warned Yung of the possibility of a harsh sanction for its noncompliance with discovery orders. *See Yung I,* DE 13, DE 16; *Yung II,* DE 8, DE 10. Yung never responded to the Gissingers' motions or to Judge Matsumoto's orders. Yung may or may not have actually received these filings since it apparently left Taiwan after filing answers. For present purposes, it suffices that Yung was aware of the pendency of these actions and that all of the relevant court orders and motion papers were forwarded to Yung at its last known address. *See* Ann Taylor, Inc. v. Interstate Motor Carrier, Inc., 2004 WL 2029908, *1-*3 (S.D.N.Y. Sep. 13, 2004) (granting plaintiff's motion for a default judgment after discovery demands served by mail at the defendant's last known address were returned to plaintiff as "undeliverable"). Under the circumstances, Yung's persistent lack of participation in these actions can only be described as willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. M. Dean,* 204 F.R.D. 251,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

255 (S.D.N.Y.2001) (citations and quotations omitted). Yung's disappearance was not a factor beyond its control and cannot shield it from the consequences of its failure to participate in the instant suit. *See Ann Taylor,* 2004 WL 2029908 at *1-*3.

The Gissingers expended considerable resources in locating Yung, including retaining the services of a private investigator in Taiwan, and I conclude that they have done all that could be expected of them to locate the defendants. *Cf. Welch v. Alexis,* 2004 WL 1920810 (E.D.N.Y. May 26, 2004) (declining to strike defendants' answer as a Rule 37 sanction where the plaintiffs had not hired an investigator and had taken only meager steps to locate the defendants). Given the difficulty of locating Yung at this time and the strong likelihood that further orders would be as futile as those previously issued, I recommend that the court strike Yung's answers in both cases. *See The Original San Francisco Toymakers, Inc. v. Trendmasters, Inc.,* 2003 WL 22384771 (N.D.Cal. Oct. 7, 2003) ("The repeated failure of Defendant to attend hearings, the inability of its former defense counsel to serve papers upon it, and the undelivered mail returned to the Court, all inspire little confidence that Defendant's failure to form a defense is due to excusable neglect or that a sanction less than default judgment will have any effect.").

**\*5** As an alternative or additional form of relief, the Gissingers have requested that the court enter a judgment of default against Yung in each case. At this juncture, a default judgment is premature since the Gissingers' submission is silent with regard to such crucial factors as the amount of money involved and the severity that such a judgment would impose on the defendants. *See Ann Taylor,* 2004 WL 2029908, *2-3. Should the court adopt the recommendation made herein to strike Yung's answers, the Clerk should enter a notation of default against Yung in each case. *See Fed.R.Civ.P. 55(a)* ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ... the clerk shall enter the party's default."). Thereafter, the Gissingers would be free to move for a default judgment pursuant to and in accordance with Fed.R.Civ.P. 55(b)(2).

*III. Recommendation*

For the reasons set forth above, I respectfully recommend that the court strike Yung's answers.
IV. Objections

The Gissingers are directed to serve a copy of this Report and Recommendation on Yung by UPS International, and to file proof of service with the court by April 28, 2006. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir .1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**SO ORDERED.**

E.D.N.Y.,2006.

Gissinger v. Yung
Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 63484 (S.D.N.Y.)

(Cite as: 2004 WL 63484 (S.D.N.Y.))

C

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Christopher J. DOYLE, Plaintiff,
v.
Adrian H. ANDERSON, Dutchess County Sheriff, et al., Defendants.
No. 02Civ.3572 (RMB)(FM).

Jan. 13, 2004.

**Background:** Former county jail inmate brought pro se civil rights action against county officials.

**Holding:** On officials' motion to dismiss, the District Court, Berman, J., for reasons stated in report and recommendation of Frank Maas, United States Magistrate Judge, held that inmate's failure to appear at status conference, failure to appear at deposition ordered by court, failure to respond to other discovery requests, and failure to appear at show cause hearing warranted dismissal.

Motion granted.

West Headnotes

**Federal Civil Procedure 170A** ⟲ **1278**

170A Federal Civil Procedure

    170AX Depositions and Discovery
      170AX(A) In General
        170Ak1278 k. Failure to Respond; Sanctions.
Most Cited Cases

**Federal Civil Procedure 170A** ⟲ **1451**

170A Federal Civil Procedure

    170AX Depositions and Discovery
      170AX(C) Depositions of Parties and Others
Pending Action

        170AX(C)6 Failure to Appear or Testify;
Sanctions

        170Ak1451 k. In General. Most Cited Cases

Former county jail inmate's failure to appear at status conference, failure to appear at deposition ordered by court, failure to respond to other discovery requests, and failure to appear at show cause hearing warranted dismissal of his pro se civil rights action against county officials. Fed.Rules Civ.Proc.Rule 37(b), 28 U.S.C.A.

*DECISION AND ORDER*

BERMAN, J.
I. Background
    **\*1** On or about May 9, 2002, Christopher J. Doyle ("Doyle" or "Plaintiff") filed a pro se complaint pursuant to 42 U.S.C. § 1983 ("Complaint") against Adrian H. Anderson, Dutchess County Sheriff; Warden David Rugar, Dutchess County Jail ("Dutchess Jail"); Lt. Michael J. Waters, Lt. Joseph A. Roberto, and C.O. John Derevjanik, Corrections Officers at Dutchess Jail; Marlene Partridge, R.N.; and several Prison Health Services Employees, et al. (collectively, "Defendants"), alleging that, while an inmate at Dutchess Jail, Plaintiff was deprived of adequate medical care, Complaint at 4, was denied "meaningful and adequate access to the Courts by reason of lack of opportunity to sufficiently access the law library ...," Complaint at 6, and was denied habitable living conditions. Complaint at 8-11.
    On or about June 27, 2003, Defendants filed a motion to dismiss ("Motion") accompanied by a memorandum of law in support of motion to dismiss ("Def's Memo"), arguing, among other things, that the Complaint should be dismissed pursuant to Rule 37(b) of the Federal Rules of Civil Procedure because "plaintiff has failed to respond to defendant's duly served discovery demands, failed to appear for a scheduling conference on March 25, 2003, and failed to attend a duly noticed deposition upon oral examination ... ordered by the Court." Motion at 1. On September 16, 2003, United States Magistrate Judge Frank Maas, to whom this matter had been referred, issued an Order to Show Cause ("OTSC") inquiring "why the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 63484 (S.D.N.Y.)

(Cite as: 2004 WL 63484 (S.D.N.Y.))

Court should not recommend the dismissal of this action with prejudice, pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure, due to [Plaintiff's] failure to cooperate in discovery and for want of prosecution" with a return/hearing date of September 26, 2003. OTSC at 1-2. Plaintiff, who by that time had been released from jail, neither appeared in court on September 26, 2003 nor submitted a response to the OTSC.

On December 18, 2003, Magistrate Judge Maas issued a comprehensive Report and Recommendation ("Report") recommending that Defendants' Motion be granted and the Complaint dismissed with prejudice because, among other things, Plaintiff failed to prosecute the case in that he: (1) failed to appear for a status conference scheduled on March 3, 2003, even though it "is clear that Doyle was aware of the conference since he called Chambers the day before the conference to confirm the schedule and ask for directions to the Courthouse," Report at 2; (ii) failed to appear for a deposition ordered by the Court for May 12, 2003; (iii) "failed to provide any responses to the Defendants' other discovery requests," Report at 3; and (iv) Plaintiff did not appear for the September 26, 2003 Order to Show Cause hearing. Report at 3.

The Report advised that "[t]he parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure." Report at 4. Neither Plaintiff nor Defendants have submitted objections.

**\*2** For the reasons set forth below, the Court adopts the Report in its entirety.

II. Standard of Review

The Court may adopt those portions of a magistrate judge's report to which no objections have been made and which are not facially erroneous. *See* Fed.R.Civ.P. 72(b); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). The court conducts a de novo review of those portions of the report to which objections have been made. *Pizarro,* 776 F.Supp. at 817. Once objections have been made, a district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge. *Deluca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988). Where, as here, the plaintiff is proceeding pro se, "leniency is generally accorded." *Bey v. Human Resources Admin.,* No. 97 Civ. 6616, 1999 WL 31122, at *2 (E.D.N.Y. Jan.12, 1999).

III. Analysis

The Court has conducted a review of the record herein, including, among other things, the Report and applicable legal authorities. *Pizarro,* 776 F.Supp. at 817. The Court concludes that the Report is not clearly erroneous, and that Magistrate Judge Maas' determinations are supported by the record and the law in all respects.

IV. Conclusion

The Court adopts Magistrate Judge Maas' Report in its entirety, and, for the reasons stated herein and therein, dismisses the Complaint with prejudice. The Clerk of the Court is respectfully requested to close this case.

S.D.N.Y.,2004.

Doyle v. Anderson
Not Reported in F.Supp.2d, 2004 WL 63484 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.